IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BOBBY HUNT, et al.** | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:23-CV-01758 |
| | : | |
| vs. | : | Judge Algenon L. Marbley |
| | : | |
| **THE CITY OF NELSONVILLE, OHIO,** | : | Magistrate Judge Jolson |
| et al. | : | |
| | : | |
| Defendants. | : | |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

The Ohio Department of Public Safety ("ODPS") should produce an Activity Report showing the dates and times that Plaintiff Bobby Hunt was ran through the Law Enforcement Automated Data System ("LEADS"). Or Defendants should be allowed to produce a copy of the report it obtained from ODPS. The parties agree, *the LEADS Activity Report is likely dispositive in nature*. Further, it is apparently undisputed that the LEADS Activity Report would only reveal the dates and times Hunt was ran through LEADS.[1]

Yet, ODPS opposes production, citing a broad and unbinding privilege based on the Ohio Administrative Code. But this is a federal case and privilege must be analyzed under the federal common law. And on a nuanced review, the existence of a federal privilege is dubious. But this Court need not wade into whether the Activity Report is privileged. Even if it the Court *assumes* some cognizable privilege, production should be ordered under a self-protection exception—*an exception recognized in every other privilege context*—so that Defendants may use the Activity Report to defend against the allegations in this lawsuit.

---

[1] As explained more below, the undersigned has never actually seen the Activity Report, despite Nelsonville receiving a copy from ODPS. So, this response cannot fully speak to the contents. Regardless, ODPS's MIO does not seeming dispute the content of the Activity Report.

I. RELEVANT BACKGROUND

    A. **The LEADS record is a central piece of evidence in this case.**

Although Plaintiffs bring numerous claims, the heart of this litigation turns on whether Nelsonville Police Department ("NPD") and its officers had probable cause for actions taken on June 6, 2022. (*See* Complaint, ECF No. 1). In short, NPD claims it had knowledge Mr. Hunt did not possess a valid motorcycle endorsement via checks through the Law Enforcement Data System ("LEADS") occurring before June 6, 2022. (*See* Tollinger Dep. at 22:2-25:18). Thus, when Mr. Hunt was observed on June 6, 2022, operating a motorcycle, NPD maintains probable cause existed, at least in part, based on previously checking Mr. Hunt in LEADS.

As Plaintiffs point out, a LEADS Activity Report showing whether Mr. Hunt was run through the system—prior to the June 6, 2022, encounter with NPD—would be dispositive of the probable cause issue. (Plaintiffs' Motion to Compel, ECF No. 17 at PageID: # 145). Thus, the record has been of much interest to both parties. Plaintiff issued a Request for Production to Defendants requesting the LEADS record. (*Id.*). At the time of responding to the Requests, Defendants did not have possession of the requested document. (*Id.*).

Thereafter, the parties worked together attempting to get relevant information from LEADS. In connection with this cooperative effort, NPD Police Chief Tolliver obtained an Activity Report from ODPS. (*See* Plaintiff's Motion to Compel, Ex. 4, ECF No. 17-4, PageID: # 163). However, Chief Tolliver was advised by LEADS that he could not disseminate the document in connection with this civil litigation.[2] Ultimately Plaintiffs attempted to secure the document via subpoena, culminating in the instant motion practice.

---

[2] The Chief was advised not to share it with the undersigned. As such, out of an abundance of caution, the undersigned has obtained or even seen the Activity Report under a theory that ODPS is still in ultimate control of the document until this Court orders otherwise, if it is so inclined.

B. **Relevant background about LEADS.**

The Ohio Revised Code establishes "a program for administering and operating a law enforcement automated data system, to be known as LEADS, providing computerized data and communications to the various criminal justice agencies of the state." R.C. § 5503.10. The statute further designates the superintendent of the state highway patrol to designate "rules and criteria for granting and restricting access to information maintained in LEADS." *Id*.

Pursuant to R.C. § 5503.10, ODPS has promulgated an administrative rule restricting access of "[m]essages and/or throughput of any kind accessed through LEADS shall be restricted to the use of duly authorized law enforcement and/or criminal justice agencies for the administration of criminal justice." Ohio Administrative Code 4501:2-10-06(C). It is this Rule ODPS cites arguing a broad privilege exists preventing disclosure of the Activity Report. (ODPS MIO, ECF No. 20 at PageID: # 173)

II. **ARGUMENT**

At the outset, it is important to clarify the standard of review. ODPS argues it cannot produce any of the requested records because they are "privileged documents which are not subject to dissemination **under Ohio law**." (ODPS MIO, ECF No. 20 at PageID: # 173) (emphasis added). But Ohio law does not control in this federal proceeding on claims exclusively federal in nature. (*See generally*, Complaint, ECF No. 1). To be sure, "a state legislature cannot purport to make binding pronouncements of law concerning what evidence may be privileged or otherwise admissible in a federal court action involving claims based on federal law." *Freed v. Grand Court Lifestyles, Inc*., 100 F.Supp.2d 610, 612 (S.D.Ohio 1998). Simply put, "state privilege law is not controlling in federal question cases." *Id*.

3

With respect, neither ODPS—*nor the cases it relies upon*—adequately address the issue of whether a federal privilege exists here.

### A. Even if there is a privilege, production of the Activity Report should be produced under a self-protection exception.

Before wadding into whether a privilege exists, or to what extent it applies, the Court can resolve this dispute on narrower grounds by finding a self-defense exception to any assumed privilege. Indeed, the Defendants here seek production of the document in connection with defending themselves from civil liability directly associated with their law enforcement role and the use of LEADS.

Every recognized privilege has exceptions. A notable, and common exception is where the privilege must be lifted for use in one's defense of claims against them. *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis,* S.D.Ohio No. 1:11CV00851, 2013 U.S. Dist. LEXIS 123936, at *16 (July 12, 2013) (explaining the common law self-protection exception to attorney-client privilege); *see also Billman v. Hirth*, 10th Dist. Franklin No. 97APE12-1657, 1998 Ohio App. LEXIS 3795, at *21 (Aug. 20, 1998) (explaining a doctor's right to disclose privileged information to defend against a lawsuit); *Kane v. Kelly Servs*., E.D.Mich. No. 03-CV-70691-DT, 2006 U.S. Dist. LEXIS 90036, at *2 (Dec. 13, 2006) (recognizing an exception to the federal common law psychotherapist-patient privilege in defending civil claims).

Here, Defendants are authorized users of LEADS, presumably used LEADS in connection with their law enforcement duties and are now facing civil liability in connection with that conduct. Just like lawyers and doctors, Defendants must be afforded an exception to a LEADS privilege in order to use relevant records to defend against these claims of wrongdoing.

4

As such, to the extent this Court finds a privilege, it should also recognize an exception to that privilege and compel the production of the LEADS activity record so it may be used by Defendants in defending against Plaintiffs' allegations.

### B. Federal common law controls and ODPS fails to establish any recognized federal privilege.

To the extent the Court wades into the larger issues, no privilege should be found here. To begin, the burden of establishing privilege rests with the party asserting it. *Kamenski v. Wellington Exempted Village Schs*, N.D.Ohio No. 1:14-cv-01589, 2016 U.S. Dist. LEXIS 58036, at *6 (May 2, 2016). Further, "[a] statute granting a privilege is to be strictly construed so as to avoid a construction that would suppress otherwise competent evidence." *Baldrige v. Shapiro*, 455 U.S. 345, 360, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982) (internal quotation omitted).

In federal question cases pending in federal court—as we have here—Federal Rule of Evidence 501 guides the privilege inquiry. *Id.*; *see also, Freed*, 100 F.Supp.2d 610, 612. Relevantly, Fed.R.Evid. 501, instructs that privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." *Id.* (quoting Fed.R.Evid 501).[3] Notably, Rule 501 "provides courts with flexibility to ***develop rules of privilege based on a case-by-case basis***." *Kamenski*, 2016 U.S. LEXIS 58036, at *6.

#### 1. *The state statutes at issue are not sufficient to establish a federal privilege.*

ODPS only cites to Ohio Administrative Code 4501:2-10-06(C) as the underlying source of the privilege at issue here. (ODPS MIO, ECF No. 20 at PageID: # 173). Initially, it must be noted that under Ohio law, it is unclear that an administrative regulation can serve as the basis

---

[3] The rule also provides exceptions, where the U.S. Constitution, a federal statute, or rule prescribed by the Supreme Court instructs on the privilege either. These are not applicable here.

5

for establishing a privilege—but it certainly cannot when such privilege exceeds the scope of the underlying legislative enactment. *See generally, State ex rel. Gallon & Takacs Co., L.P. v. Conrad*, 123 Ohio App.3d 554, 558, 704 N.E.2d 638 (10th Dist.1997). As discussed more below, the claimed privilege exceeds the scope of the legislative enactment.

But even if the state statute here were on point—and it unequivocally created a broad privilege under Ohio law—that statute alone would be insufficient to create a privilege under federal law. *See Kamenski*, 2016 U.S. LEXIS 58036, at *6-*7 (collecting cases and rejecting the notion that a state statute is sufficient to create a federal privilege). In short, contrary to ODPS's argument, the state statute and administrative code section do not form a sufficient basis for establishing a federally recognized privilege preventing disclosure in civil discovery. And thus, they have failed to meet their burden, and production should be compelled.

2. ***The federal cases cited by ODPS do not establish the privilege.***

ODPS relies on two federal cases to bolster its position that a privilege exists here. (ODPS MIO, ECF No. 20 at PageID: # 173). Three general points about both cases might be instructive before analyzing the specifics. First, it must be noted that neither of these cases binds the Court here, and the Court has increased flexibility in the context of Rule 501 designed to afford maximum flexibility to "develop rules of privilege based on a case-by-case basis." *Kamenski*, 2016 U.S. LEXIS 58036, at *6.[4] Second, neither of the cases cited by ODPS analyze the privilege issue within the context of Federal Rule of Evidence 501, as required, thus their

---

[4] Defendants cite this specific law for a second time because they wish to stress that they do not seek a wide sweeping precedential ruling—nor is one required. This dispute can resolve on narrow and case specific grounds. Any larger discussion about the existence and scope of this privilege moving forward is likely better saved for a wider ranging dispute, and thus another day. *See BellSouth Telecomms., Inc. v. Farris*, 542 F.3d 499, 505 (6th Cir. 2008) ("'If it is not necessary to decide more, it is necessary not to decide more.'") (quoting *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799, 360 U.S. App. D.C. 344 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment)).

outcomes are of little value here. Third, both decisions deal with facially broad requests for sensitive information. Here the opposite is true, as we are dealing with a very narrow Activity Record. Regardless, as outlined below, a more detailed review of the cited authority demonstrates the cases are not instructive here and do not create the privilege ODPS seeks to enforce.

First, in 2011 the Northern District denied a motion to compel LEADS data requested via a Civil Rule 45 subpoena. *See generally, McCloskey v. White*, N.D.Ohio No. 3:09 CV 1273, 2011 U.S. Dist. LEXIS 147090, at *3 (Dec. 20, 2011). Unlike here, the subpoena in *McCloskey* was broad, seeking all LEADS activity for all officers in the department for a two-year period. *Id*. The production was vigorously opposed, with OSP "stress[ing] that Plaintiff's subpoena demands LEADS reports for all data accessed by eighteen authorized users over a two-year period" which would include sensitive information such as social security numbers. *Id*. On this record, the Northern District denied the obviously overbroad request, and finding a privilege. But the Court never analyzed the privilege issue in context of Evidence Rule 501. *Id*. Thus, *McCloskey* is not instructive.

Next, in 2021 an issue of LEADS data came before the Honorable Magistrate Judge Deavers or this Court. *Johnson v. Gallia Cty. Commrs.*, S.D.Ohio No. 2:20-cv-65, 2021 U.S. Dist. LEXIS 34173 (Feb. 24, 2021). *Johnson* was a prison/deliberate indifference case where the plaintiff requested production of "the complete criminal record and all booking information of all inmates confined to Gallia County Jail" over a thirty-day period. *Id*. Relying heavily on McCloskey, the court found a privilege. *Id*. But again, the issue was not analyzed under Rule 501, nor in the context of the type of record being requested. *Id*. As such, *Johnson* is not instructive.

7

### C. The Court should decline to recognize a privilege under Rule 501 related to the cited Ohio administrative code and legislative section.

Although state statutes do not create binding federal privilege, a court may analyze the enactment as part of the process to determine if a federal privilege should apply. *Freed v. Grand Court Lifestyles, Inc.*, 100 F.Supp.2d 610, 614 (S.D.Ohio 1998). When deciding whether to recognize Ohio's statutory privilege under Fed. R. Evid. 501, the Court "must balance the policy interests served by recognizing the state's privilege against the policy interests served by allowing Grand Court to access the requested information." *Id.*

#### 1. *The balancing of interests demonstrates there is no privilege here.*

The policy interests represented by ODPS's purported privilege necessarily relate to protecting sensitive records used by law enforcement. That policy interest is mitigated because the document sought is an Activity Report, showing only the dates and times Mr. Hunt was ran through LEADS. In other words, it is a record evidencing the functioning of the system, not records maintained in the system. On the other side, the parties here have an interest in adjudicating a federal lawsuit alleging serious constitutional violations. And the Activity Record is potentially case dispositive. On balance, the policy needs served by recognizing production greatly outweigh those served by recognizing it.

#### 1. *Neither the Ohio Administrative Code, nor the Ohio Revised Code contemplates the broad privilege ODPS asserts.*

ODPS cites the *Ohio Administrative Code* as the source of the privilege at issue. (ODPS MIO, ECF No. 20 at PageID: # 173). First, Ohio courts have held that an administrative agency may not promulgate rules beyond the scope of the authorizing statute. *See State ex rel. Gallon & Takacs Co., L.P. v. Conrad*, 123 Ohio App.3d 554, 558, 704 N.E.2d 638 (10th Dist.1997) (rejecting non-disclosure rules promulgated by Ohio's BWC). Thus, the relevant inquire is the

8

actual legislative enactment underpinning the cited rule. Here the Ohio Revised Code Section provides:

> There is hereby created in the department of public safety, division of state highway patrol, a program for administering and operating a law enforcement automated data system, to be known as LEADS, providing computerized data and communications to the various criminal justice agencies of the state. The program shall be administered by the superintendent of the state highway patrol, who may employ such persons as are necessary to carry out the purposes of this section. ***The superintendent shall adopt rules*** under Chapter 119. of the Revised Code establishing fees and guidelines ***for the operation of and participation in the LEADS program. These rules shall include criteria for granting and restricting access to information maintained in LEADS.***

R.C. § 5503.10 (emphasis added).

The word privilege is not used, nor even suggested. And again, it is critical to remember that any claim of privilege must be "strictly construed so as to avoid a construction that would suppress otherwise competent evidence." *Baldrige*, 455 U.S. 345. Even liberally reading the statute, it merely authorizes the creation of rules of granting and restricting access to LEADS—it does not establish any privilege intending to be restrictive in the manner ODPS maintains it is here.

> **2. *The criminal penalties for the misuse of LEADS are red herrings and do not have bearing on the privilege issue.***

ODPS also cites criminal statutes related to the misuse of LEADS as further justification for its refusal to provide records. (ODPS MIO, ECF No. 20 at PageID: # 174). Such criminal penalties are not at play here. As outlined above, the privilege issue is one if federal law and state legislatures cannot make laws restricting what material may be privileged or used as evidence in federal court. *See Freed*, 100 F.Supp.2d. 610 at *612. Thus, to the extent the Court finds no federal privilege, it may order production of the documents.

9

**D. Even if the Court recognizes an applicable privilege, the requested Activity Report is outside the scope of privileged information.**

ODPS argues that a narrowed request for the Activity Log is within the broad scope of the privilege it asserts. Not true. The Ohio statutory enactment only allows ODPS to establish rules about access to information "*maintained* in LEADS." (i.e. the records). *See* R.C. § 5503.10 (emphasis added). The Activity Report is information generated by the operation of the system— not the substantive information *maintained* within LEADS. As such, the Activity Report, by its very nature, is not the type of document the privilege was intended to protect.

This logic only strengths when applying it to the potentially broader scope of the Administrative Code, as cited by ODPS, which argues that the language specifically protects "***throughput*** of any kind." (ODPS MIO, ECF No. 20 at PageID: # 176) (legal citation omitted) (emphasis added). Thus, plainly any potential privilege scope of the administrative code section is restricted to "throughput" or "messages" the only two categories mentioned. (*Id.*).[5]

Notably, the section only restricts "throughput" – an incomplete word with a distinct scope of meaning. (throughput means "the amount of something (such as material, data, etc.) that ***passes through something*** (such as a machine or system)." *See* "throughput." Merriam-Webster.com. 2024. https://www.merriam-webster.com (15 May 2024)) (emphasis added). Thus, throughput in the context of LEADS would naturally mean the law enforcement records stored in LEADS, *passing through the system*, to law enforcement agencies (or in other words, the exact process contemplated by the entire system).

On the other hand, *output* is a distinct concept meaning "something ***produced***…***such as the information produced by a computer***. *See* "output" Merriam-Webster.com. 2024. https://www.merriam-webster.com (15 May 2024) (emphasis added). Law enforcement records

---

[5] Messages, as used, are not at issue. Assumingly why ODPS does not mention them.

are not produced by LEADS, they are merely stored. The Activity Report is a record reflecting the information actually produced by the system—records of use.

Words matter, and as ODPS itself concedes, the wording of the regulation limits any possible privilege to throughput while remaining silent on LEADS output. Notwithstanding, it is Defendants' sincere hope that this dispute resolves well before the need to evoke any Latin expressions regarding the exclusion of the word "output."

\* \* \*

Defendants respectfully request an order compelling—or allowing—production of the Activity Report.

Respectfully submitted,

*/s/ Thomas N. Spyker*
Patrick Kasson (0055570)
Thomas N. Spyker  (0098075)
**REMINGER CO., LPA**
200 Civic Center Drive, Suite 800
Columbus, Ohio  43215
Tel: (614) 228-1311 | Fax: (614) 232-2410
Email: pkasson@reminger.com
          mmalone@reminger.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was filed and served via this Court's CM/ECF electronic filing system this 15th day of April 2024, upon all parties and/or counsel of record.

                                                      */s/ Thomas Spyker*
                                                      Thomas Spyker (0098075)