IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BOBBY HUNT, et al.,**

   **Plaintiffs,**

 v.               Civil Action 2:23-cv-1758

                  Magistrate Judge Jolson

**CITY OF NELSONVILLE OHIO, et al.,**

   **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel (Doc. 17). For the following reasons, the Court **DENIES** the motion **without prejudice**. The parties are **ORDERED** to confer on alternative discovery methods to obtain the information sought in the Motion to Compel and submit a joint status report within **ten (10) days** of the date of this Order.

### I. BACKGROUND

This case involves claims of civil rights violations that center on Defendants' entry onto Plaintiffs' property, the seizure of Plaintiff Hunt's motorcycle, and Plaintiffs' subsequent arrests. (*See generally* Doc. 1). In relevant part, the complaint alleges that Defendant Fitch, the Chief of Police of the City of Nelsonville, informed Defendant Officers Adams and Tracey that the police department had received complaints about a man riding a motorcycle without a valid license. (*Id.* at ¶ 15). Plaintiffs say this report was fabricated "with the purpose to violate and deprive Plaintiffs of their civil rights" because Hunt owned a motorcycle and had recently had negative interactions with Nelsonville city officials. (*Id.* at ¶¶ 11–16). After receiving the report, Adams and Tracy entered Plaintiffs' property—Adams went to the front porch and Tracy went to the backyard. (*Id.* at ¶¶ 18–20). At the same time, Defendant Fitch completed a registration check in the Law Enforcement Automated Data System

("LEADS") on the motorcycle in Hunt's yard. (*Id.* at ¶ 21). The LEADS request returned a valid registration for the motorcycle in Hunt's name with a negative motorcycle operator's endorsement. (*Id.* at ¶ 22). On this information, Plaintiffs allege Fitch ordered the motorcycle to be impounded and issued Plaintiff a traffic citation. (*Id.* at ¶¶ 22–23). An altercation followed that resulted in Nelsonville officers arresting both Plaintiffs. (*Id.* at ¶¶ 24–50).

In support of their claims that Defendants "did not have probable cause to enter upon the Plaintiffs' property to make any inquiry regarding Plaintiff Hunt's license status," Plaintiffs sought a copy of data from LEADS that identified Hunt in the ninety days leading up to these events. (Doc. 17 at 1–2). This record was not "produced in the criminal discovery of Plaintiff [Hunt] being charged with a suspended operator's license . . . ." (*Id.* at 2). Plaintiffs issued a subpoena to the LEADS Administration Acting Director Victoria Dowdy at the Ohio Department of Public Safety ("ODPS") seeking the information. (*Id.*; *see* Doc. 17-2). Counsel for ODPS objected to the subpoena on the grounds that it required disclosure of privileged or protected information under Ohio law and the common law privilege for law enforcement investigatory information. (Doc. 17-3 (citing Ohio Rev. Code §§ 109.57, 2913.04(C)–(D); Ohio Admin. Code 4501:2-10-06)). ODPS also maintained that the disclosure of the information sought would be a criminal offense under Ohio law. (*Id.* (citing Ohio Rev. Code § 2913.04(C)).

After some back and forth between ODPS and the parties, ODPS held firm to its position. (Docs. 17-4, 17-5). And, although the current Police Chief of the Nelsonville Police Department has a copy of an activity report from ODPS that may contain the information sought, ODPS advised him that "he could not disseminate the document in connection with this civil litigation." (Doc. 23 at 2). Thus, the parties and ODPS were at impasse.

On the parties' request, the Court held a status conference, and the Court invited Plaintiffs to file a motion to compel (Doc. 16). Plaintiffs did so, requesting that Defendants and ODPS produce "information and documents they have that is evidence of any LEADS inquiry about Plaintiff [Hunt] from 1/1/21 to 6/8/22." (Doc. 17 at 4). Plaintiffs represent this includes "only the LEADS log of an inquiry and no other data." (*Id.* at 3, n.1). Both ODPS and Defendants filed responses, and Plaintiffs filed a reply. (Docs. 20, 23, 26). In their response, Defendants request that, if the Court does not compel production from ODPS, the Court allow them to produce the information themselves. (Doc. 23 at 11). On the Court's order (Doc. 24), ODPS also filed a brief. (Doc. 25). Accordingly, the matter is ripe for review.

**II.   DISCUSSION**

To begin, the Court notes that Plaintiffs and Defendants are aligned. They all want the information at issue in the motion to compel. Plaintiffs believe that the "lack of any document from LEADS to [Defendants] would be dispositive proof Defendants had no probable cause to enter upon Plaintiff's property to make any inquiry regarding Plaintiff Hunt's license status." (Doc. 17 at 2). On the other side, Defendants believe that the information would allow them to defend against Plaintiffs' allegations because "probable cause existed, at least in part, based on previously checking Mr. Hunt in LEADS." (Doc. 23 at 5). Put plainly, the parties agree that the information is highly relevant to the probable cause analysis. (*Id.*; Doc. 23 at 2).

But ODPS resists disclosure, arguing that only "duly authorized law enforcement and/or criminal justice agencies" may use LEADS data and only for "the administration of criminal justice." (Doc. 20 at 3 (quoting Ohio Admin. Code 4501:2-10-06(C)). Under this view of the law, ODPS says the LEADS data is protected because the parties are not "authorized [LEADS] users," and civil litigation is not a "criminal justice purpose." (Doc. 20 at 3). In support of its position, ODPS offers

3

cases where courts have protected LEADS data in civil litigation. *See, e.g.*, *Johnson v. Gallia Cnty. Commissioners*, No. 2:20-CV-65, 2021 WL 716621, at *4–6 (S.D. Ohio Feb. 24, 2021) (denying a request for the complete criminal history of all inmates confined in a jail over a month-long period); *McCloskey v. White*, No. 3:09 CV 1273, 2011 WL 6371869, at *1–3 (N.D. Ohio Dec. 20, 2011) (denying a request for all LEADS reports run by all users of a police department over an almost three-year period). In *McCloskey*, the Northern District found a "[legislative] intent that the LEADS data requested . . . be privileged." 2011 WL 6371869, at *1–3. Then, in *Johnson*, this Court held that civil litigation is not a "criminal justice purpose" pursuant to which LEADS information can be disseminated. 2021 WL 716621, at *5.

That said, the scope and type of data requested here is much narrower than in those cases. Plaintiffs do not seek anyone's complete criminal history. *Id.* at *1. Nor do the parties want LEADS reports run by all users of a police department during a broad period of time. *McCloskey*, 2011 WL 6371869, at *1–2. Instead, the parties want confirmation about one report. (*See* Doc. 17 at 4 ("The information sought is only that LEADS confirm whether or not the specific information provided by the Nelsonville Division of Police or any other Criminal Justice Agency (CJA) was ever submitted as an inquiry about Plaintiff Hunt's status to operate a motor vehicle.")). So, arguably, the cases ODPS cites are distinguishable.

More still, the importance of discovery in civil litigation must not be easily dismissed. "The purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice." *Adkins v. Marathon Petroleum Co. LP*, 672 F. Supp. 3d 483, 500 (S.D. Ohio 2023) (citation omitted); *see also Brown Badgett, Inc. v. Jennings*, 842 F.2d 899, 902 (6th Cir. 1988) ("Together with other pretrial procedures, these rules 'make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'") (citation

4

omitted).  The Court is mindful of these values, especially considering that ODPS's position appears to be that LEADS data is always off-limits in civil litigation.

Further compounding the issue, Defendants argue that they are authorized LEADS users whose liability in this action is potentially impacted by their use (or nonuse) of the LEADS system.  In other contexts, this Court has observed that "the Ohio Supreme Court has shown a tendency not to apply [a] privilege in cases where it would effectively prevent a party from proving his or her case because all, or at least the bulk, of the most relevant evidence is contained in privileged communications." *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, No. 1:11-C-V00851, 2013 WL 4757486 (S.D. Ohio July 12, 2013) (citing *TattleTale Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, No. 2:10-CV-226, 2011 WL 382627 (S.D. Ohio Feb. 3, 2011) (internal quotation marks omitted); *see also Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) ("[A] plaintiff should not be denied access to information necessary to establish her claim . . . .") (citation omitted).  Those cases' reasoning rings true here.

Fortunately, however, there might be an alternative to deciding the privilege question.  In both their motion to compel and their reply brief, Plaintiffs propose other discovery mechanisms to explore the probable cause question.  (*See* Doc. 17 at 4–5 (suggesting that a response from Defendants on a certain request for production "would identify when Defendants had actual knowledge of Plaintiff Hunt's motorcycle endorsement status."); Doc. 26 at 5 (outlining documents and video footage Defendants could produce if the motion to compel is denied)).  ODPS also suggests that deposing Defendants about if and when they made a LEADS inquiry about Plaintiff Hunt would not breach confidentiality or infringe any privilege. (Doc. 25 at 6).  It is unclear from the briefing whether the parties conferred on these or other discovery methods.  Especially in light of ODPS's non-party status, the parties must explore alternatives.  *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for

5

issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").

Therefore, the Court **DENIES** the Motion to Compel **without prejudice** and **ORDERS** the parties to meet and confer on this matter.  The parties are **ORDERED** to file a status report within the next ten (10) days, updating the Court on their progress.  The Court strongly encourages the parties to work towards an extrajudicial solution on this discovery matter.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Compel (Doc, 17) **without prejudice**.  The parties are **ORDERED** to confer on alternative discovery methods and submit a joint status report within the next **ten (10) days**.

IT IS SO ORDERED.


Date:  May 2, 2024                                          /s/ Kimberly A. Jolson
                                                           KIMBERLY A. JOLSON
                                                           UNITED STATES MAGISTRATE JUDGE

6